UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TENNESSEE

WESTERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

v.

ELTON FIELDS,

     Defendant.

Case No. 2:25-cr-20400-TLP

MOTION TO SUPPRESS EVIDENCE

Defendant Elton Fields, through undersigned counsel, respectfully submits this Motion to

Suppress Evidence obtained during a warrantless search of Defendant's residence conducted on

November 25, 2025, and in support thereof states as follows:

RELIEF REQUESTED

Defendant respectfully requests that this Court:

1. Grant this Motion to Suppress Evidence;

2. Suppress all evidence obtained during the search of Defendant's residence on

November 25, 2025, including but not limited to the Fentanyl, Cocaine,

Methamphetamine, and firearms seized during that search; and

3. Grant such other and further relief as the Court deems just and proper.

**NATURE OF THE MOTION**

This motion challenges a warrantless search conducted without consent. The search violated the Fourth Amendment to the United States Constitution because: (1) Defendant never consented to the search—not verbally, not in writing, and not through any conduct; (2) law enforcement falsely claimed to possess a search warrant when no such warrant existed; (3) the only warrant in law enforcement's possession was an arrest warrant for a person who does not reside at the property; (4) Defendant was immediately handcuffed upon opening the door and was physically restrained throughout the search; (5) after completing the search, officers attempted to obtain retroactive written consent, which Defendant refused to provide; (6) officers then obtained a consent form signed by Shakira Norvell (Defendant's girlfriend), who does not reside at the property and had no authority to consent; (7) Ms. Norvell's purported consent is invalid under *Georgia v. Randolph*, 547 U.S. 103 (2006), because Defendant was physically present and had expressly refused to consent; and (8) Officers' consciousness of their unlawful conduct demonstrated by their destruction of Defendant's security cameras, failure to activate body cameras, and DEA Special Agent Bridger's post-search attempt to fabricate evidence of consent through a compound leading question.

These violations strike at the core of the Fourth Amendment's protection of the home. Defendant did not consent to this search. Officers had no warrant authorizing the search. Officers had no legal justification to enter and search Defendant's residence. The evidence obtained through this blatantly unconstitutional search must be suppressed.

.

**FACTUAL BACKGROUND**

On November 25, 2025, law enforcement agents from the Shelby County Safe Task Force and the DEA, led by DEA Special Agent Bridger, arrived at Defendant's residence located at 2709 Orman Avenue, Memphis, TN. The agents were searching for a fugitive named Jimmy McMahan who was the subject of an arrest warrant. The fugitive does not reside at Defendant's residence and has never resided there. Law enforcement has acknowledged this fact at the probable cause hearing in this case.

When the agents arrived at Defendant's residence, they knocked on the door and announced in a loud voice: "US Marshals with a warrant, come outside now, we are going to breach the door." Defendant heard this announcement and understood the agents to be claiming they possessed a warrant authorizing entry into his home.

In fact, law enforcement did not possess a search warrant for Defendant's residence. Law enforcement possessed only an arrest warrant for Mr. McMahan, a person who does not reside at Defendant's address and has never resided at the property.

Based on the officers' false claim of possessing a warrant and their threat to use force to break down the door, Defendant opened the door. Immediately upon opening the door, Defendant told the officers that the individual they were seeking was not at the address. Officers then immediately placed Defendant in handcuffs on the ground along with his pregnant girlfriend, Shakira Norvell. At no time did Defendant consent to any search of his residence. Defendant never gave verbal consent to enter or search, never gave written consent, and never indicated in any way that officers had permission to search his home.

While Defendant was in handcuffs, officers entered his residence and conducted a thorough search. During the search, officers seized Fentanyl, Cocaine, Methamphetamine, and three firearms. This evidence forms the basis of the charges against Defendant in this case.

After completing the search, officers attempted to obtain written consent to search from Defendant. Defendant refused to sign the consent form. Officers then obtained a written *consent to search* form signed by Defendant's girlfriend. Defendant's girlfriend does not reside at the property, does not have legal authority over the property, and had no authority to consent to a search of Defendant's residence. Furthermore, this attempt to gain retroactive consent from the Defendant occurred approximately 3 to 4 hours after the search was completed and the Defendant was awaiting transport to the detention facility.

Critically, Defendant was present and in handcuffs at the time his girlfriend signed the purported consent form. Defendant had already verbally refused to consent and had refused to sign the written consent form himself. The attempt to obtain retroactive consent from Defendant's girlfriend after Defendant's express refusal cannot validate an otherwise unconstitutional search.

Defendant possesses a video recording that documents law enforcement's statement that they had a warrant and their threat to breach the door if he did not come outside. The recording corroborates Defendant's account of the officers' announcement and the circumstances under which Defendant opened the door.

Officers took active steps to prevent their conduct from being recorded. Officers destroyed Defendant's outdoor security cameras by jumping up and breaking them. Officers also covered at least one camera with a shirt to obstruct its view. These actions demonstrate officers'

consciousness that their conduct was unlawful and their intent to conceal evidence of the constitutional violation.

Although officers appear to have been wearing body cameras on their vests, no body camera footage has been produced in discovery. Either the officers deliberately failed to activate their body cameras, or they failed to attach the cameras to the camera slots on their vests. The absence of body camera footage—combined with the deliberate destruction and obstruction of Defendant's cameras—creates a strong inference that officers were concealing unlawful conduct. If officers had valid consent or lawful authority to search, they would have no reason to destroy cameras or fail to record the encounter on their body cameras.

After the search was completed, officers took a recorded statement from Defendant. The fact that officers had the ability to audio record demonstrates that audio recording equipment was available at the scene during the search. If Defendant had consented to the search, officers could and should have obtained audio-recorded consent at the time. The failure to obtain recorded consent—while later taking a recorded statement—further demonstrates that no consent was given.

In the post-search audio recording, DEA Special Agent Bridger attempted to fabricate evidence of consent through a compound question. Agent Bridger asked: "Earlier you told them yea go on in the house this person is not in there, right?" This question combined two separate assertions: (1) that Defendant gave consent, and (2) that Defendant told officers the fugitive was not in the house. Defendant answered "yes, I told them he wasn't in there, yes," responding only to the second part of the question. Agent Bridger's use of this compound question was a deliberate attempt to create the false appearance of consent in the audio record. Defendant made clear in his

response that he only said "I told them he wasn't in there" and did not agree to the consent portion of the question.

The destruction of cameras, the absence of body camera footage, the failure to obtain recorded consent despite having recording equipment available, and Agent Bridger's attempt to fabricate consent through leading compound questions, and attempting to get a signed *consent to search* after the search was concluded all demonstrate officers' consciousness that the search was unlawful. These facts support suppression and warrant an adverse inference against the government regarding the circumstances of the purported consent.

**ARGUMENT**

**I. The Search Violated the Fourth Amendment Because No Consent Was Given and Any Purported Consent Was Invalid**

A. Legal Standard for Valid Consent to Search

The government bears the burden of proving that consent to a warrantless search was freely and voluntarily given. Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973); Bumper v. North Carolina, 391 U.S. 543, 548 (1968). This burden "cannot be discharged by showing no more than acquiescence to a claim of lawful authority." Bumper, 391 U.S. at 548-49. The question of whether consent was voluntary "is a question of fact to be determined from the totality of all the circumstances." Schneckloth, 412 U.S. at 227.

Under the totality of circumstances test, courts consider multiple factors, including: (1) whether the consenting party was in custody or detained; (2) whether officers claimed to have a warrant or other legal authority; (3) whether officers made threats or used coercive language; (4) the

consenting party's age, intelligence, and education; (5) whether the consenting party was informed of the right to refuse consent; and (6) whether a reasonable person would have felt free to refuse or terminate the encounter. See Schneckloth, 412 U.S. at 226-27; Florida v. Royer, 460 U.S. 491, 497-99 (1983); United States v. Drayton, 536 U.S. 194, 201-02 (2002).

Critically, when law enforcement officers claim to possess a warrant—whether truthfully or falsely—any consent obtained in response to that claim is per se invalid. Bumper, 391 U.S. at 548-49. In Bumper, the Supreme Court held that "when a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion." Id. at 550. The Court concluded that "[w]here there is coercion there cannot be consent." Id. A claim of warrant authority negates voluntariness as a matter of law because it communicates to the homeowner that resistance is futile and that the search will occur regardless of the homeowner's wishes.

Similarly, consent obtained while a person is unlawfully detained is presumptively invalid. Florida v. Royer, 460 U.S. at 507-08. In Royer, police detained the defendant by retaining his identification and airline ticket without indicating he was free to leave. The Supreme Court held that any consent given during this unlawful detention was "tainted by the illegality" and therefore "ineffective to justify the search." Id. at 507. The Court emphasized that "a reasonable person would have believed that he was not free to leave" under those circumstances, rendering any purported consent involuntary. Id. at 502.

B. Application: No Valid Consent Exists Under Any Analysis

Measured against these legal standards, the government cannot possibly establish valid consent in this case. Every factor in the totality of circumstances analysis weighs decisively against voluntariness:

(1) Defendant Never Consented. Most fundamentally, Defendant never gave consent—not verbally, not in writing, and not through any conduct. Defendant was placed in handcuffs immediately upon opening the door and remained restrained throughout the search. A person in handcuffs cannot meaningfully consent to a search. The physical restraint itself demonstrates the absence of voluntariness.

(2) Officers Claimed Warrant Authority. Officers announced "we have a warrant, come outside or we will breach the door" which was false. Under Bumper, this false claim of warrant authority renders any purported consent invalid as a matter of law. 391 U.S. at 548-49. When officers claim to possess a warrant, they communicate that the occupant "has no right to resist the search" and that cooperation is mandatory rather than voluntary. Id. at 550. Defendant opened the door based on this coercive misrepresentation, not because he voluntarily agreed to permit a search.

(3) Officers Threatened Force. Officers did not merely knock and request entry. They threatened: "if you don't open the door we are going to breach the door." This explicit threat of physical force is the antithesis of voluntary consent. A reasonable person faced with this threat understands that the door will be breached regardless of consent, making any response inherently involuntary.

(4) Defendant Was Unlawfully Detained. Defendant was placed in handcuffs immediately upon opening the door, without probable cause for arrest and without consent to detention. Under Royer, consent obtained during an unlawful detention is "tainted by the illegality" and

presumptively invalid. 460 U.S. at 507-08. Defendant was not free to leave, not free to refuse, and not free to terminate the encounter—he was physically restrained in handcuffs while officers searched his home.

(5) Defendant Was Not Informed of Right to Refuse. Although knowledge of the right to refuse is not strictly required under Schneckloth, it remains a significant factor in the totality of circumstances. Here, not only was Defendant not informed of his right to refuse, he was affirmatively misled into believing he had no right to refuse by the false claim of warrant authority and the threat of force.

(6) No Reasonable Person Would Have Felt Free to Refuse. Under Drayton, voluntariness can be measured by asking "whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." 536 U.S. at 201. Here, a reasonable person would not feel free to refuse when officers falsely claim to have a warrant, threaten to break down the door, maintain an overpowering number of officers with guns, and immediately place the occupant in handcuffs. These circumstances communicate absolute authority and eliminate any perception of choice.

(7) The After-the-Fact "Consent" Confirms the Absence of Prior Consent. The fact that officers attempted to obtain written consent from Defendant after completing the search demonstrates that officers knew they had not obtained consent beforehand. If Defendant had consented by opening the door or through any verbal agreement, officers would have had no need to seek written consent after the fact. The post-search consent attempt is an admission that no prior consent existed.

The government bears the burden of proving that a warrantless search was conducted with valid consent. Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973). The government cannot meet this burden because Defendant never consented to the search. Defendant did not give verbal consent, did not give written consent, and took no action that could reasonably be interpreted as consent. To the contrary, Defendant was placed in handcuffs immediately upon opening the door and was physically restrained throughout the entire search. A person in handcuffs cannot meaningfully consent to a search.

C. The Girlfriend's After-the-Fact Consent Is Invalid Under Georgia v. Randolph

The after-the-fact consent purportedly obtained from Defendant's girlfriend is also invalid and cannot cure the constitutional violation. First, the consent was obtained after the search was already completed, making it legally meaningless. Consent must precede the search to be valid; retroactive consent cannot justify an already-completed warrantless search. Second, even if the girlfriend's consent had been obtained before the search, it would be invalid under Georgia v. Randolph, 547 U.S. 103 (2006). In Randolph, the Supreme Court held that when a physically present resident expressly refuses consent to search, law enforcement cannot rely on consent from another co-occupant. The Court explained that "a physically present inhabitant's express refusal of consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant." Id. at 122-23.

Here, Defendant was physically present—indeed, he was in handcuffs being detained by officers—when his girlfriend signed the consent form. Defendant had already expressly refused to consent by declining to sign the form himself. Under Randolph, the girlfriend's consent is invalid as a matter of law because Defendant, the resident of the property, was present and had

expressly objected. The girlfriend's purported consent cannot override Defendant's refusal.

Moreover, the girlfriend does not reside at the property and therefore lacked common authority

to consent even in the absence of Defendant's objection. See United States v. Matlock, 415 U.S.

164, 171 (1974) (third-party consent valid only when person has "common authority" over the

property). Furthermore, at the time agents attempted to get the consent form signed by Norvell,

they had already completed the audio recording where the Defendant clearly advised agents that

Ms. Norvell does not reside at the residence.

In summary, the government cannot meet its burden of proving voluntary consent. The totality of

circumstances demonstrates that no valid consent existed at any point: (1) Defendant never

consented—not verbally, not in writing, not through any conduct; (2) Defendant was

immediately handcuffed and detained without consent; (3) officers obtained entry through a false

claim of warrant authority combined with threats of force, which is per se coercive under

Bumper; (4) the girlfriend's after-the-fact consent cannot retroactively justify the search; and (5)

even if obtained beforehand, the girlfriend's consent would be invalid under Randolph because

Defendant was present and objecting. The warrantless search violated the Fourth Amendment

and all evidence must be suppressed.

## D. Recent Sixth Circuit Authority Confirms That Announcements of Intent to Enter Vitiate Consent

The Sixth Circuit recently addressed a factually analogous situation in United States v. Waide,

60 F.4th 327 (6th Cir. 2023). In Waide, law enforcement officers arrived at the defendant's

residence with a warrant to retrieve a DVR. When officers announced their intention to execute

the warrant, Waide admitted to possessing marijuana. The government argued this admission

constituted voluntary consent or an independent basis for a search warrant. The Sixth Circuit rejected this argument, holding that "where there is coercion there cannot be consent." Id. at 335 (citing Bumper v. North Carolina, 391 U.S. 543, 548-49 (1968)).

The court emphasized that the attenuation doctrine did not apply because Waide's admission occurred "immediately after [the officer] announced the officers' intention to enter the residence regardless of Waide's consent." Id. at 336. The Sixth Circuit reversed the district court's denial of the motion to suppress, finding that evidence obtained following an officer's announcement of intent to enter—even when coupled with a defendant's subsequent statements or apparent acquiescence—cannot be considered voluntary consent.

Here, officers announced not only their intent to enter but falsely claimed to possess a warrant authorizing entry and threatened to "breach the door"  if Defendant did not open it. Under Waide, Defendant's act of opening the door in response to this announcement cannot constitute voluntary consent. The coercive announcement—combining a false claim of warrant authority with an explicit threat of force—vitiates any purported consent as a matter of law.

Moreover, unlike in Waide where officers possessed an (invalid) warrant for the DVR, here officers possessed no warrant whatsoever authorizing search of Defendant's residence. They possessed only an arrest warrant for a third party who does not reside at the property. The constitutional violation here is even more egregious than in Waide, where the Sixth Circuit nonetheless ordered suppression.

## II. Law Enforcement Lacked Authority to Search a Third Party's Home Based on an Arrest Warrant Alone

An arrest warrant for one person does not authorize entry into the home of a third party and does not authorize a search of that third party's residence. A separate search warrant is required to search a third party's home, absent valid consent or exigent circumstances. Steagald v. United States, 451 U.S. 204 (1981).

In Steagald, DEA agents had an arrest warrant for a fugitive named Lyons but no search warrant for the defendant's home where they believed Lyons might be located. The Supreme Court held that "the search of petitioner's home was no more reasonable from petitioner's perspective than it would have been if conducted in the absence of any warrant." Id. at 216. The Court concluded that the warrantless search violated the Fourth Amendment because the arrest warrant protected only the fugitive's interests, not the homeowner's Fourth Amendment rights.

Here, officers had an arrest warrant for a fugitive who did not reside at Defendant's address. Officers had no search warrant for Defendant's residence. The arrest warrant gave officers no authority to search the home of someone else. By law, officers were required to obtain a search warrant before entering Defendant's residence. Even if Defendant had not opened the door, officers would have had no valid authority to forcibly enter based solely on an arrest warrant for a person who did not live there.

The fact that law enforcement has admitted the fugitive does not reside at the property underscores the constitutional violation. Officers sought to search a residence where they had no reasonable basis to believe the person named in their arrest warrant could be found. Under Steagald, this exceeds the authority granted by an arrest warrant and requires a separate search warrant.

The Sixth Circuit has consistently applied Steagald's requirement that officers obtain a search warrant before entering a third party's residence to execute an arrest warrant. In United States v. Buckner, 717 F.2d 297 (6th Cir. 1983), the court addressed the intersection of Payton v. New York and Steagald, holding that a defendant arrested in a third party's home generally lacks standing to challenge the entry unless he resided there. However, Buckner does not aid the government here. In Buckner, officers had reason to believe the defendant was actually present in the third-party residence and observed him through the screen door before entering. Here, by contrast, law enforcement has admitted that the fugitive does not reside at Defendant's address and officers had no reasonable basis to believe the fugitive was present. Defendant, as the resident of the searched premises, has full standing to challenge the warrantless entry into his own home. Officers' reliance on an arrest warrant for a non-resident gave them no authority whatsoever to enter or search Defendant's residence under Steagald.

### III. The Video Recording Establishes the False Warrant Claim

Defendant possesses objective evidence of the officers' false statement: a video recording of the officers' announcement at Defendant's door. The video documents the officers stating they had a warrant and threatening to breach the door.

Video recordings are admissible at suppression hearings under the relaxed evidentiary standards applicable to such proceedings. Federal Rules of Evidence Rule 1101(d)(1). The video is highly relevant to the dispositive question: whether officers made a false claim of warrant authority that coerced Defendant's consent.

The video will be presented at the evidentiary hearing requested below. It provides contemporaneous, objective proof of what officers actually said, unfiltered by the passage of

time or the interested testimony of the parties. The video corroborates Defendant's factual account and establishes the foundation for suppression under Bumper and Steagald.

**IV. The Destruction of Evidence and Attempted Fabrication of Consent Warrant Suppression and Adverse Inferences**

The destruction of Defendant's security cameras, the absence of body camera footage, and Agent Bridger's attempt to fabricate consent through leading questions constitute spoliation of evidence and demonstrate consciousness of guilt. These facts independently support suppression and warrant adverse inferences against the government.

When law enforcement destroys or fails to preserve evidence that would be favorable to a defendant, courts may draw adverse inferences and even suppress evidence obtained through the misconduct. See Arizona v. Youngblood, 488 U.S. 51 (1988); California v. Trombetta, 467 U.S. 479 (1984). Here, officers deliberately destroyed Defendant's outdoor cameras and covered others with clothing. This was not mere negligence—it was intentional destruction of evidence that would have documented the officers' conduct and statements at the door.

The absence of body camera footage is equally troubling. Officers either deliberately failed to activate their cameras or deliberately failed to attach them to their vests. Either way, the failure to record the encounter—combined with the destruction of Defendant's cameras—creates a strong inference that officers were engaged in unlawful conduct and sought to conceal it. If officers had lawful authority or valid consent, they would have had no reason to avoid recording the encounter.

Most damning is Agent Bridger's post-search attempt to fabricate consent through a compound question. By asking "Earlier you told them to go on in and that he wasn't in there, right?" Agent Bridger attempted to trick the Defendant into appearing to confirm consent when he was only

confirming that Defendant told officers the fugitive was not inside the home. This is evidence fabrication, plain and simple. It demonstrates that Agent Bridger knew consent had not been obtained and was attempting to create false evidence of consent after the fact.

The Court should draw adverse inferences from the destroyed camera footage and missing body camera footage. The Court should infer that this footage would have shown: (1) officers making false claims of warrant authority; (2) Defendant being immediately handcuffed without consenting; (3) officers entering and searching without permission; and (4) the coercive circumstances under which the girlfriend's invalid consent was obtained with retroactive intent. When the government destroys or fails to preserve evidence within its control, the court must presume the evidence would have been unfavorable to the government. This presumption supports suppression of all evidence obtained during the unlawful search.

## V. Officers Had No Exigent Circumstances Justifying Warrantless Entry

The government may argue that exigent circumstances justified the warrantless entry and search. This argument fails because the government bears the burden of proving exigent circumstances existed, and no such circumstances are present in this case.

Exigent circumstances permitting warrantless entry into a home exist only when officers have "an objectively reasonable basis for believing" that (1) there is an immediate need to protect life or property, (2) evidence is being destroyed, or (3) a suspect is fleeing or will flee. Kentucky v. King, 563 U.S. 452, 460 (2011); Missouri v. McNeely, 569 U.S. 141, 149 (2013).

The Sixth Circuit recently applied this standard in Reed v. Campbell County, 2023 WL 5604200 (6th Cir. 2023) (unpublished). In Reed, officers responded to a 911 call reporting a possible domestic dispute. When they arrived, they observed no disturbance, saw a man and woman

inside through a window, and noted that the woman appeared uninjured. When the homeowner refused entry and closed the door, one officer kicked the door down and forcibly removed the homeowner. The Sixth Circuit held that the entry was not justified by exigent circumstances, emphasizing that the "presence of a woman inside a home who appeared 'timid' to a police officer, without more, does not constitute exigent circumstances." Id. at *4.

Here, officers had even less justification than in Reed. Officers were not responding to a 911 call or emergency. They had no reason to believe anyone inside the residence was in danger. They had no reason to believe evidence was being destroyed. They had no reason to believe the fugitive—who does not reside at the property—was present inside, let alone fleeing. Officers simply wanted to search for a fugitive and chose to bypass the Fourth Amendment's warrant requirement by falsely claiming they had a warrant and threatening to break down the door.

Even if officers subjectively believed the fugitive might be inside (which they could not have reasonably believed given their admission that he does not reside there), mere suspicion that a wanted person might be in a residence does not constitute exigent circumstances. Under Steagald, officers must obtain a search warrant before entering a third party's residence to search for a fugitive, absent true exigent circumstances or valid consent. Neither existed here.

The government cannot meet its burden of proving exigent circumstances. The warrantless entry violated the Fourth Amendment, and all evidence obtained as a result must be suppressed.

**REQUEST FOR EVIDENTIARY HEARING**

Defendant requests an evidentiary hearing pursuant to Fed. R. Crim. P. 12 to establish the facts supporting suppression. At such hearing, Defendant will: (1) present the video recording documenting the officers' false claim of warrant authority and threat to breach the door; (2) testify that he never consented to any search, was immediately handcuffed upon opening the door, and expressly refused to sign the written consent form; (3) present evidence that his girlfriend, Ms. Norvell does not reside at the property and had no authority to consent; (4) establish that Ms. Norvell's consent form was signed after the search was completed and after Defendant had expressly refused consent while physically present; (5) present evidence that officers destroyed Defendant's outdoor security cameras and covered others to prevent recording of their conduct; (6) establish that no body camera footage exists despite officers wearing body camera vests; (7) present the audio recording in which DEA Special Agent Bridger attempts to fabricate consent through a compound leading question; and (8) demonstrate that officers had audio recording capability available but failed to obtain recorded consent, yet later obtained a recorded statement after the search.

Federal Rule of Criminal Procedure 12(b)(3)(C) requires that motions to suppress evidence be raised by pretrial motion if the basis is reasonably available. This motion is timely filed. Once a defendant makes a prima facie showing of a Fourth Amendment violation—which Defendant has done here by establishing that he was handcuffed without consent and that officers lacked a search warrant—the burden shifts to the government to prove the legality of the search. The government cannot meet this burden. An evidentiary hearing is necessary to allow the Court to make essential findings of fact and conclusions of law regarding the absence of consent, the invalidity of any purported consent, and the scope of the officers' authority.

**PRAYER FOR RELIEF**

WHEREFORE, Defendant respectfully requests that this Court:

1. Grant Defendant's Motion to Suppress Evidence;

2. Suppress all evidence obtained during the search of Defendant's residence on November 25, 2025, including but not limited to the Fentanyl, Cocaine, Methamphetamine, and firearms seized during that search, as well as any derivative evidence obtained as fruit of the poisonous tree, including any statements made by Defendant and any evidence obtained in subsequent searches based on information gathered during the illegal search;

3. Allow defense an evidentiary hearing on this Motion May 22, 2026 at 1:30; and

4. Grant such other and further relief as the Court deems just and proper.


Respectfully submitted,


/s/ Brandon C. Hall_____
Attorney for Defendant
Brandon C. Hall
200 Jefferson Ave.
Suite 700
Memphis, TN 38103
901-522-1365
BHall@BrandonHallLaw.com
BPR#33943
Date: March 30, 2026

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true copy of the foregoing document was forwarded by electronic means via the Court's electronic filing system to the U.S. Attorney, 167 N. Main, Suite 800, Memphis, TN 38103, this 30th day of March, 2026.

_____/s/ Brandon C. Hall_____

Attorney for Defendant